UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AMBER OWENS, Executrix of the Estate of Roger Owens, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL NO. 2:10cv262 ) |
| NORFOLK SOUTHERN CORPORATION, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by the defendant, Norfolk Southern Corporation ("Norfolk Southern")[1], on April 6, 2011. The plaintiff, Amber Owens, Executrix of the Estate of Roger Owens ("Owens"), filed her response on May 13, 2011, to which Norfolk Southern replied on May 27, 2011.

For the following reasons, the motion for summary judgment will be granted.

### Summary Judgment

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when

---

[1] Norfolk Southern Corporation notes that it is not a proper party defendant in this case. Norfolk Southern Corporation is a publicly traded holding company that owns all of the issued and outstanding shares of Norfolk Southern Railway Company, which owns and operates the line of railroad involved in this case; further, the train involved in this accident was a Norfolk Southern Railway Company train, and the crew operating this train were Norfolk Southern Railway Company employees. Therefore, for purposes of its motion, Norfolk Southern has assumed that all allegations against Norfolk Southern Corporation are made against Norfolk Southern Railway Company.

"'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" AA Sales & Assocs. v. Coni-Seal, Inc., 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." If appropriate, summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P. 56(e)(2); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. Anderson, 477 U.S. at 255; Washington v. Haupert, 481 F.3d 543, 550 (7th Cir. 2007); Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. AA Sales & Assocs., 550 F.3d at 609.

## Discussion

Norfolk Southern provides the following background facts, which it claims are undisputed. Roger Owens died after being run over by a Norfolk Southern freight train on September 6, 2009, at Gary, Indiana. At the time of the accident, Mr. Owens was

lying between the rails at a remote section of Norfolk Southern's mainline track between the Grant Street/Ridge Road grade crossing intersection to the east and the Chase Street grade crossing intersection to the west. Mr. Owens was nearly one-half mile from the nearest public road crossing. He was highly intoxicated, and also had drugs in his system at the time of his death (marijuana and anticonvulsants/he was an epileptic). He never moved as the train approached, failing to respond to multiple blasts of the train's horn. Mr. Owens told medical responders at the scene that he had been trying to kill himself.

On the day of the accident, Norfolk Southern train 217L405 ("Train 217") was traveling from New Haven, Indiana to Chicago over Norfolk Southern's mainline track, which run northwest through the city of Gary. The train was operated by a Norfolk Southern crew, Engineer Nick Kern and Conductor Michael Randolph. Train 217 consisted of 89 cars and two locomotive units, weighed approximately 2,704 tons, and was nearly 4,912 feet in length.

Train 217 reached Gary just before 6:00 p.m. As the lead locomotive cleared the Grant Street/Ridge Road crossing heading northwest at about thirty (30) miles per hour, Engineer Kern and Conductor Randolph were looking down the track toward an intermediate wayside train signal that becomes visible as the train approaches the Chase Street crossing. Additionally, Engineer Kern and Conductor Randolph were keeping a lookout for any conditions of the right-of-way while also maintaining the train's speed within the Timetable limit.

About one-half mile after the lead locomotive crossed the Grant Street/Ridge Road crossing, Conductor Randolph spotted something orange between the rails and said, "What is

3

that?" to Engineer Kern. (Randolph Decl. ¶ 13.) Engineer Kern thought that the object might have been a piece of trash or a construction barrel, but neither he nor Conductor Randolph could determine what the object was at that point, as the train was about five railroad car lengths (approximately 250 feet) away from the object. (Kern Decl. ¶ 14; Randolph Decl. ¶ 13.) About this same time, Engineer Kern began to blow the locomotive's horn, and he continued to blow the horn as the train approached the object, but the object didn't move. (Id.)

It was not until the train was nearly on top of the object – about one railroad car length (about 50 feet) away – that the crew could see that the object was a person lying across the track, as Mr. Owens was lying facing away from the train with part of his legs across the south rail of the track and the rest of his body between the rails. (Id.) As soon as the crew recognized that the object was a person, Engineer Kern applied the train's brakes, but he couldn't stop the train in time to prevent running over Mr. Owens. (Id.)

Train 217 was traveling just under thirty (30) miles per hour immediately before the crew discovered Mr. Owens on the track. (Declaration of Jeff Gentsch, ¶ 6.) From the time the crew first saw anything on the track, only about six seconds elapsed before the train reached Mr. Owens. (Kern Decl. ¶ 14; Declaration of Adam M. Mastrangelo, ¶ 11.) The crew's testimony is corroborated by the RailView recording, which has been provided to the court as an exhibit. The RailView recording confirms that Train 217 was traveling just under thirty (30) miles per hour at the time of the incident (approximately 17:08.23 on the RailView timestamp). (Mastrangelo Decl. ¶ 12.) RailView further confirms that Train 217 was approximately two hundred fifty (250) feet from Mr. Owens when Engineer Kern first sounded the horn, that Engineer Kern repeatedly sounded the horn during those six seconds before the train reached Mr. Owens, and that Mr.

4

Owens never moved as the train approached.(Mastrangelo Decl. ¶¶ 12-13.)

Given the size and the speed of the train, Norfolk Southern argues that there was nothing the crew could have done to stop the train in time to prevent the accident. (Gentsch Decl. ¶ 10.) In fact, the train traveled in excess of 1,400 feet after Engineer Kern first applied the train's brakes before coming to a stop. (Gentsch Decl. ¶ 8; Kern Decl. ¶ 14; Randolph Decl. ¶ 13.)

The distance between the Grant Street/Ridge Road and Chase Street crossings is approximately one mile, and there are no public or private crossings within about ½ mile east or west of the location that Mr. Owens was lying on the track. It was unusual for the crew to see any persons walking alongside or crossing the track in this area, as much of the railroad right-of-way is wooded and separated from the adjoining property by trees and vegetation. (Kern Decl. ¶ 8; Randolph Decl. ¶ 8.). Before encountering Mr. Owens in this area, neither Engineer Kern nor Conductor Randolph had seen any person or animal walking alongside or crossing the track, or any other condition or object that might have affected the safe movement of their train as they proceeded northwest towards the Chase Street crossing. (Kern Decl. ¶¶ 12-13, 16; Randolph Decl. ¶¶ 12, 16.) Mr. Owens was not an employee of Norfolk Southern, (Zroskie Decl. ¶ 6), and no third-party contractors were performing any work on Norfolk Southern's property in the vicinity of the accident, (Zroskie Decl. ¶ 7).

In support of its motion for summary judgment, Norfolk Southern first argues that there is no evidence that it breached any duty to Mr. Owens, who was a trespasser on Norfolk Southern's property. Owens has alleged in her complaint that Norfolk Southern was negligent in its operation of the locomotive and that it failed to maintain control of the vehicle, failed to apply its brakes, and failed to maintain a safe and proper lookout over the railway. Under Indiana

5

law, to prevail on her claim Owens must prove that: (1) Norfolk Southern owed a duty to Mr. Owens; (2) Norfolk Southern breached its duty; and (3) Norfolk Southern's breach proximately caused Mr. Owens' injuries. See Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 635 (7th Cir. 2007) (applying Indiana law).

Because Mr. Owens was injured on Norfolk Southern's property, this is a premises liability case. See Perry v. Norfolk and Western Ry. Co., 865 F. Supp. 1292, 1297 (N.D. Ind. 1994). In a premises liability case, an entrant's status as a trespasser, licensee, or invitee determines the duty that the landowner owes to him. E.g., Burrell v. Meads, 569 N.E.2d 637, 639 (Ind. 1991). Here, it cannot be disputed that Mr. Owens was a trespasser on Norfolk Southern's property. Mr. Owens was lying across Norfolk Southern's mainline track at the time of the accident, and failed to move as the train approached. (Kern Decl. ¶ 14; Randolph Decl. ¶¶ 14, 16.)

It is well-settled under Indiana law that Norfolk Southern's duty of care toward Mr. Owens, a trespasser, was very limited:

> Where a person is a trespasser on a railroad company's track, the railroad company owes the person no duty to use ordinary care for his . . . protection. To a trespasser . . . the railroad owes only the duty not to injure him or her willfully or wantonly, and to exercise ordinary care to avoid injury after it becomes cognizant of the peril of such person.
>
> \* \* \*
>
> [A] railroad owes a trespasser . . . on its private right-of-way no duty to maintain a lookout . . . but only a duty to refrain from wantonly or intentionally inflicting injury and to use due care to avoid injury, if cognizant of the trespasser's peril.

24 Ind. L. Encyc., Railroads §§ 71, 84 (West 2011) (footnotes omitted); see also William L. Prosser & W. Page Keeton et al., Prosser and Keeton on Torts § 58, pp. 393-94 (5th ed. 1984)

("[T]he possessor is not liable to injury to trespassers caused by his failure to exercise reasonable care . . . He thus is under no obligation . . . to keep a lookout as he . . . runs his train."). This Court has acknowledged that a landowner like Norfolk Southern owes no duty to a trespasser like Mr. Owens "[e]xcept to refrain from willfully or intentionally injuring him after discovery of his presence." Maynard v. Ind. Harbor Belt R.R., 997 F. Supp. 1128, 1131 (N.D. Ind. 1998) (quoting Chi., S. Shore & S. Bend Ry. v. Sagala, 221 N.E.2d 371, 374 (Ind. App. 1966)). Only after a railroad becomes aware of the trespasser in a position of peril does the duty become one to exercise ordinary care. See, e.g., Calvert v. N.Y. Cent. R.R., 199 N.E. 239, 241 (Ind. 1936). For the duty of due care to arise, the railroad "must actually know that the [trespasser] was in a place of peril, in a helpless condition and in imminent danger . . . ." N.Y. Cent. R.R. v. Green, 15 N.E.2d 748, 751 (Ind. App. 1938); see also S. Ry. v. Wahl, 149 N.E. 72, 75 (Ind. 1925) ("'No special duty to use care in favor of a particular party arises without actual notice of the particular party's peril.'") (quoting Terre Haute, Indianapolis, & E. Traction Co. v. Stevenson, 123 N.E. 785, 786 (Ind. 1919)).

Accordingly, "[t]here is no rule of law in Indiana which requires an engineer to slow down the speed of his train or stop because he sees an object on the track, the character of which he does not know, and which may be a piece of paper, a bunch of grass, or a wild animal, although it might prove to be a human being." Wahl, 149 N.E. at 76. Further, "[a] railroad company does not have a duty to anticipate a trespasser and may assume that there are no trespassers on its property." Maynard, 997 F. Supp. at 1131-32 (citing Freitag v. Chi. Junction Ry., 89 N.E. 501, 503 (Ind. App. 1909)); see also Sagala, 221 N.E.2d at 375 ("as to an adult trespasser . . . the owner of a railroad track is generally under no duty to become cognizant or

7

maintain a lookout for such persons. The trespasser comes upon such a right-of-way at his own peril."); Calvert, 199 N.E. at 241 ("Where a trespasser or mere licensee is upon the private right of way of a railroad company, the company owes no duty to maintain a lookout or a system of signals to prevent the trespasser or licensee being injured.").

In Wahl, a trespasser was injured when his arm was run over and severed by a railroad after the trespasser had fallen, struck his head, and become unconscious upon the defendant railroad's track. The trespasser alleged that the engineer knew that an object was on the track, but that the engineer nevertheless failed to keep diligent watch and lookout to ascertain if such object was a person and failed to slow the speed of the train while approaching the unknown object. The Indiana Supreme Court rejected the plaintiff's claim, holding that "the defendants did not owe plaintiff any special duty to exercise care in his behalf until they had actual knowledge of his situation and peril." Wahl, 149 N.E. at 76.

Likewise here, Engineer Kern and Conductor Randolph were unaware of Mr. Owens' presence on the track until the last moment. Notwithstanding keeping a lookout ahead, the crew did not see an object on the track until the train was approximately five railroad car lengths (about 250 feet) from that object, but the only thing they could tell at that point was that the object was orange in color. (Kern Decl. ¶ 14; Randolph Decl. ¶ 13.) They were under no duty to slow or stop the train at this point. Wahl, 149 N.E. at 76. It was not until Engineer Kern and Conductor Randolph were less than a railroad car length away that they recognized the object on the track was a person and that he was in a situation of peril, as Mr. Owens was facing away from the approaching train. (Kern Decl. ¶ 14; Randolph Decl. ¶ 13.) Therefore, any duty that Norfolk Southern owed to Mr. Owens did not arise until this time, and any evidence of Norfolk

8

Southern's alleged negligence prior to this time is immaterial. Maynard, 997 F. Supp. at 1131; Calvert, 199 N.E. at 241; Wahl, 149 N.E. at 76.

Owens has failed to respond with any evidence indicating that Norfolk Southern negligently failed to avoid the accident after discovering Mr. Owens' position of peril on the tracks. Rather, Owens claims (without citation to authority) that, due to his intoxicated state, Mr. Owens was non sui juris and, therefore, that Norfolk Southern owed him a duty of reasonable care that arose at some time before the crew discovered his presence on the tracks.

Owens does not challenge Norfolk Southern's contention that Mr. Owens' presence on the tracks was not discovered until the train was less than one railroad car length away, or that Norfolk Southern took reasonable measures to avoid the accident after Mr. Owens' presence was discovered. Rather, Owens claims that Norfolk Southern should have been aware of Mr. Owens' presence on the track (i.e., had constructive knowledge of his presence) because he was lying on a path allegedly used by those who lived in the area.

The general rule expressed in so-called "foot path" cases is:

> [I]f the evidence shows that the public has for a long time, customarily and constantly, openly and notoriously, crossed railroad tracks at a place not a public highway, with the knowledge and acquiescence of the railroad company, a license or permission by the company to all persons to cross the tracks at that point may be presumed, and the railroad company is under a duty to exercise reasonable care in the movement of its trains at points where it is bound to anticipate their presence.

N.Y. Cent. R.R. v. Wyatt, 184 N.E.2d 657, 662 (Ind. App. 1962)(internal citations omitted).

Owens, in her declaration, states that Mr. Owens was lying across "a well worn path, known by area residents as a way to cross the railroad tracks." (Owens Decl. ¶ 7.) However, Owens has not presented any evidence that Norfolk Southern knew that persons regularly

9

crossed the tracks at this remote location or that it acquiesced in their use. Rather, the undisputed testimony from the crew was that it was unusual to see any persons walking alongside or crossing the track in this area, and that the track in this area was lined with trees and vegetation. Given these undisputed facts, there is no evidence from which it can be presumed that residents had a license or permission from Norfolk Southern to use its right of way and, therefore, there is no evidence to support the premise that Norfolk Southern had constructive knowledge of Mr. Owens' presence on the tracks.

Accordingly, Norfolk Southern's duty of care did not arise until it had actual knowledge of Mr. Owens' presence. Perry, 865 F. Supp. at 1300-01. The undisputed facts demonstrate that the crew did not discover Mr. Owens' presence on the tracks until the train was less than a railroad car length away from Mr. Owens. It is also undisputed that as soon as the crew discovered Mr. Owens' presence, Engineer Kern continued to sound the horn and applied the train's brakes, but Mr. Owens never moved and the train could not stop in time to prevent running him over.

Owens has alleged that Norfolk Southern was negligent for failing to maintain control of the train it was operating. However, there is no evidence to support Owens' allegation that the crew failed to maintain control of the train after they discovered Mr. Owens' presence on the track. The undisputed facts demonstrate that the train was traveling well within the federally prescribed speed limit of 60 m.p.h. at the time of the accident, (Gentsch Decl. ¶¶ 6-7). In fact, the train was traveling approximately 30 m.p.h. in compliance with the applicable internal Norfolk Southern Timetable limit of 30 m.p.h. for this stretch of track through Gary.

Moreover, as soon as he recognized that there was a person on the track, Engineer Kern

applied the train's brakes. (Kern Decl. ¶14.) The train stopped approximately 1400 feet farther down the track. (Gentsch Decl. ¶ 8.) Given the short distance and brief interval of time that the crew had to react, there was simply no way to stop the train in time to avoid running over Mr. Owens. (Kern Decl. ¶ 16; Gentsch Decl. ¶ 9.) Under these facts, no reasonable jury could conclude that Norfolk Southern negligently failed to maintain control of its train after discovering Mr. Owens' presence on the track.

Owens next claims that Norfolk Southern negligently failed to apply the brakes to avoid a collision. The same claim with nearly identical facts was rejected in New York Central v. Green, 15 N.E.2d 748 (1938),where a trespasser was run over by a train while lying in the center of the railroad's track nearly 800 feet from the station with no crossing near him. 15 N.E.2d at 748-50. The plaintiff alleged that the railroad was negligent in failing to stop the train to prevent running over the trespasser. Id. at 749-50. Testimony from the train's engineer established that he did not discover the trespasser's presence on the right of way until the train was 160 feet from the trespasser. Id. Upon discovering the trespasser's presence, the engineer immediately applied the train's brakes and began blowing the train's horn in an attempt to alert the trespasser that the train was approaching, but the trespasser never moved and the train could not stop in time to prevent the accident from occurring. Id.

Based on this testimony, the Court of Appeals overturned the jury verdict in favor of the plaintiff, holding that there was no evidence from which the jury could have found that the railroad failed to use reasonable care after discovering the trespasser's peril. Id. at 751; see also Steffey v. Soo Line R.R., 498 N.W.2d 304, 308-09 (Minn. App. 1993) (affirming summary judgment in favor of railroad where undisputed evidence showed that crew applied train's brakes

as soon as they recognized that object on track was a person but could not stop the train in time to prevent from running over trespasser who was lying across railroad's track).

As in Green, the undisputed facts in the present case demonstrate that there is no evidence from which the jury could find that Norfolk Southern negligently failed to apply the train's brakes to avoid a collision after discovering Mr. Owens' presence on the track. The crew's testimony established that the train was less than fifty feet away from Mr. Owens when the crew first discovered that there was a person on the track. (Kern Decl. ¶ 14, Randolph Decl. ¶ 13.) As soon as the crew recognized that there was a person on the track, Engineer Kern applied the train's brakes and continued to blow the train's horn, (Kern Decl. ¶ 14), but Mr. Owens never moved and the train could not stop in time to prevent the accident from happening.

Clearly, in the present case, there is no indication that the crew failed to take reasonable action after discovering Mr. Owens' presence on the track. Rather, given the short distance and brief interval of time the crew had to react (approximately six seconds – see RailView at 17:08:17; Mastrangelo Decl. ¶11), there was simply no way to stop the train in time to avoid running over Mr. Owens. (Kern Decl. ¶ 16; Gentsch Decl. ¶ 9.) See Moore v. Norfolk & W. Ry., No. IP 90-209-C (S.D. Ind. Apr. 23, 1990) (order granting in part and denying in part railroad's motion for summary judgment and order in limine) ("The Court knows judicially that it is impossible to stop a freight train moving at 52 miles per hour in less than several seconds and hundreds of feet.")

Finally, Owens' allegation that Norfolk Southern failed to keep a proper lookout fails under the applicable rule of law and the foregoing undisputed facts. Because Mr. Owens was a trespasser, Norfolk Southern did not owe him any duty to maintain a lookout. See Sagala, 221

N.E.2d at 375; Calvert, 199 N.E. at 241. Rather, as demonstrated above, Norfolk Southern's duty of due care did not arise until it discovered Mr. Owens' position of peril which was not until the crew was within fifty feet of Mr. Owens lying across the track. (Kern Decl. ¶ 14; Randolph Decl. ¶ 13). There is no evidence that Norfolk Southern failed to maintain a lookout from the time the crew discovered Mr. Owens in this position of peril until the accident occurred; to the contrary, the crew's actions in these brief moments (as well as before) demonstrate that once they became aware of his presence, they took the only action available to try to avoid the accident. Accordingly, no reasonable jury could conclude that Norfolk Southern failed to keep a lookout or act reasonably after discovering Mr. Owens in a position of peril. For all the above reasons, this court finds that summary judgment is appropriate in favor of Norfolk Southern.

Alternatively, Norfolk Southern argues that it is entitled to summary judgment because the undisputed facts show that Mr. Owens' negligence was the sole proximate cause of the accident or at bare minimum, that his fault accounted for more than 50% of the total fault.

Under the Indiana Comparative Fault Act, a plaintiff is barred from recovery, as a matter of law, if his contributory fault is greater than the fault of all persons whose fault contributed to his damages. Ind. Code Ann. § 34-51-2-6 (West 2011). Although the degree of fault is ordinarily a question of fact, the allocation of fault is not reserved exclusively for a jury when the material facts are such that the fact finder could reach only one logical conclusion. Reales v. Consol. Rail Corp., 84 F.3d 993, 997 (7th Cir. 1996) (citing Thiele v. Norfolk & W. Ry. Co., 68 F.3d 179, 184-85 (7th Cir. 1995) (applying Indiana law and affirming summary judgment on the basis that plaintiff was more than 50% at fault for his injuries as a matter of law).

Mr. Owens was required to exercise ordinary care for his own safety and was required to avail himself of all faculties to avoid any danger or injury, and his failure to use such care would constitute negligence. See Nesvig v. Town of Porter, 668 N.E.2d 1276, 1281 (Ind. Ct. App. 1996). In this case, "[t]he tracks themselves are a danger warning." Perry, 865 F. Supp. at 1297 (quoting Ind. Harbor Belt R.R. v. Jones, 41 N.E.2d 361, 363 (Ind. 1942)). For over a century, the law in Indiana has been clear that "between the stations and public crossings the track belongs exclusively to the [railroad], and all persons who walk, ride, or drive thereon are trespassers, and if such persons walk, ride, or drive thereon . . . they do so subject to all the risks incident to so hazardous an undertaking." Jeffersonville, Madison, and Indianapolis R.R. v. Goldsmith, 47 Ind. 43, 1874 WL 6001, at *4 (Ind. 1874). This is still the law and has been codified at Ind. Code Ann. § 8-3-15-3(a) (West 2011) ("a person who . . . walks on or along the right-of-way . . . of a railroad company at a place other than a public crossing commits a Class B Misdemeanor.").

The undisputed material facts prove that Mr. Owens was a trespasser who was lying between the rails of Norfolk Southern's track (in contravention of Indiana statute) at a remote location nearly one-half mile from the nearest public crossing.[2] (Kern Decl. ¶ 14; Zroskie Decl. ¶ 4.). In this context, violation of a statutory duty constitutes negligence under Indiana law. French v. Bristol Myers Co., 574 N.E.2d 940, 943 (Ind. Ct. App. 1991) ("The unexcused or

---

[2] Owens has asserted, without citing to any evidence, that a genuine issue of material fact exists as to whether Mr. Owens was attempting to commit suicide or whether he simply fell on the track. As Norfolk Southern has noted, the reason for Mr. Owens' presence on the tracks is immaterial. He had no right to be crossing the tracks at that point, or to be on the tracks at all, and he was, therefore, a trespasser and in violation of a statutory duty. This violation of a statutory duty constitutes negligence. French v. Bristol Myers Co., 574 N.E.2d 940, 943 (Ind. Ct. App. 1991).

unjustified violation of a duty proscribed by a statute or ordinance constitutes negligence per se if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation.").

Furthermore, Mr. Owens' blood alcohol content was well over the legal limit, and the same laboratory tests also confirmed the presence of illegal drugs in his system. (Lake Coroner's Report and Verdict, Defendant's Exhibit E.). See Nesvig, 668 N.E.2d at 1281 (intoxication is an evidentiary fact which may be taken into consideration in determining whether a plaintiff was contributorily negligent). Moreover, Mr. Owens stated to his medical care providers that he was trying to commit suicide. This evidence is more than sufficient to prove Mr. Owens' overwhelming fault (i.e., greater than fifty percent) as a matter of law. See Reales, 84 F.3d at 997; Thiele, 68 F.3d at 184-85; accord Krenzer v. Pittsburgh, Cincinnati, Chi. & St. Louis Ry., 43 N.E. 649, 649-50 (Ind. 1896) (holding that 7 ½ year old boy's act of falling asleep on railroad track was "a reckless and foolhardy act" that constituted contributory negligence and prevented the child from recovering for his injuries).

Accordingly, as there is no evidence of negligence on the part of Norfolk Southern and its
train crew, the facts of this case clearly establish that Mr. Owens' fault should operate to bar his recovery under the Indiana Comparative Fault Act, Ind. Code Ann. § 34-52-2-6 (West 2011). Thus summary judgment is appropriate on this basis also.

## Conclusion

Based on the foregoing, Norfolk Southern's motion for summary judgment [DE 20] is

hereby GRANTED.

Entered: June 13, 2011.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court